FRED S. SHERBURNE *vs.* INHABITANTS OF SANFORD.

York.    Opinion February 16, 1915.

*Assessment of Damages.    Complaint.    Raising Grade of Road.    R. S., Chap. 68.*
*Road Commissioners.*

In a proceeding under R. S., Chap. 23, Sec. 68, for the assessment of damages for the raising or lowering of a way or street by a road commissioner, or person authorized,

*Held:*

1.   That the replacing of matter that has been scraped off, or that has been washed off by the action of the elements, or that has been worn down by travel, is not a raising of the street, within the meaning of the statute.

2.   That the measure of damages is the diminution in market value of the property injured by the raising.

3.   That the rule of damages does not include damages for physical injuries that have occurred, or that may hereafter occur, to the property itself in consequence of the raising, whether by surface water or otherwise; nor for injuries which may result from insufficient catch basins, or for not keeping them properly cleaned and free; nor for the consequences of some fault in the location, size, plan of construction or general design of the sewers; nor for injuries which may result merely from surface water flowing down a street, and overflowing onto the land.

4.  That it is conclusively presumed that in the assessment of land damages for land taken for a way, the likelihood that surface water from the road may be turned onto the adjacent lands was considered, and that damages therefor were awarded.

5.  That the town is liable, with respect to surface water, only for such depreciation in value of the adjacent lands as may be caused by an increased likelihood, by reason of the raising, that surface water will flow thereon from the street doing injury.

6.  That when a land owner has obliterated a natural channel into which the surface water would have run, by putting into it a closed pipe, he cannot complain if the surface water finds its way over his land in other courses.

7.  That, in the case at bar, the increased liability, on account of any raising of the street, that surface water will flow upon and across the complainant's land is inappreciable.

On motion for new trial by defendant.    Motion for new trial sustained.

This is an appeal from the action of the municipal officers of the town of Sanford, in the County of York, on application of the plaintiff for the assessment of damages, under Secs. 67 and 68 of Chap. 23 of the R. S.    The plaintiff recovered judgment before the jury at the January term, 1914, for $1082.64.    The defendant filed a motion for a new trial.

The case is stated in the opinion.

*Elvington P. Spinney, and Lucius B. Swett,* for plaintiff.

*George W. Hanson, John V. Tucker, and Mathews & Stevens,* for defendant.

SITTING:  SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

SAVAGE, C. J.   This is a complaint for assessment of damages brought under R. S., Chap. 23, Sec. 68, which provides that "when a way or street is raised or lowered by a road commissioner or person authorized, to the injury of an owner of adjoining land, he may, within a year, apply in writing to the municipal officers and they shall view such way or street and assess the damages, if any have been occasioned thereby, to be paid by the town, and any person aggrieved by said assessment may have them determined on complaint to the supreme judicial court."   The complainant claims that the road in front of and adjoining his premises on High Street in Sanford was raised by the road commissioner in June, 1912, and that he was injured

thereby. Within the year limited he made written application to the municipal officers for an assessment of damages. They acted, but refused to assess damages on the ground that the town was not liable. Thereupon this complaint was brought. Upon trial the complainant recovered a verdict of $1082.64. The town brings the case up on a motion for a new trial.

The particular ground on which the complainant claims to recover, as stated in his complaint, is that the town raised the grade of the street and changed the ditches and water courses thereon "whereby all the water accumulated on said High Street has been turned from its original course and has flowed and still flows upon and over said land of said Sherburne and into the cellar of the dwelling house and the basement of the mill situated thereon," doing damage.

It is necessary in the first place to state, as briefly as may be, the physical situation. High Street runs in an east and west direction. Northerly of High Street it is more or less hilly, and there is generally an upward slope northward from High Street. Several streets, at right angles with High Street, open into it on the northerly side. They are, from west to east, Spruce, Brook Streets, Island Avenue and North Avenue. High Street at its westerly end opens into River Street, which descends from Zion's Hill. Between two elevations or hills on the north side is a valley in which flows Birch Log Brook. The valley, which is between Brook Street and Island Avenue, is opposite the plaintiff's land, and the brook flows down under High Street and thence down across plaintiff's land to a pond. The complainant's house is situated on the southerly, and lower, side of High Street. The house itself is on land higher than the road, but westerly from the house the land slopes down to the pond. Besides his dwelling house and out-buildings, the complainant owns a mill, situated a little southwesterly of the house, on lower ground, near the pond.

Prior to 1901, Birch Log Brook flowed under High Street in a culvert. The brook was about eight feet lower than the surface of the road. From the road to the pond it flowed in its natural channel. In the year 1901 the town took out the old culvert, and put in its place a 30 inch tile pipe. The complainant at that time connected a thirty inch pipe with the town pipe and continued it, then and later, in diminishing sizes, across his own land to the pond. So that thereafter the water of the brook which came through the pipe under the street was conveyed to the pond in the complainant's pipe, instead of

flowing along its natural channel.   Further than this, the complainant the same year filled in over the pipe on the south side of the street, untill the earth fill came up to about the level of the street or a little higher.   And at the westerly end of the fill he built a retaining wall. Upon this new made ground under which runs the brook in the pipe he made a lawn and a flower garden.   The plaintiff's driveway to his stable lies between the lawn and his dwelling house, and is on a descending grade from the street to the stable.   And from the stable there is a road down to the mill.   From the brook, High Street rises to the east and to the west.   The lowest point in the street is opposite the complainant's driveway or lawn.   An iron "grate" or screen has been placed across Birch Log Brook, a hundred or more feet northerly from the street, evidently for the purpose of preventing refuse matter from being carried into the pipe below.   It does not appear who placed the screen there.   The sidewalk on the northerly side of the street is several inches higher than the one on the southerly side.   There is a slight gutter on each side of the street, the one on the northerly side being for the most part a little higher than the southerly one.   A sewer has been laid in High Street, and catch basins, connecting with the sewer, have been placed at several points on each side of the street.

Originally there were one or more little elevations in High Street, so that surface water coming down that street from River Street was turned off onto the lower land towards the pond, south, before it reached Spruce Street, which is between River and Brook Streets. But the town reduced the elevations so that High Street was on a continuous down grade from River Street to the brook.   Some of the area on the higher land north of High Street was not within the water shed of the brook, and surface water outside the water shed naturally drained into River Street, High Street, and the other streets named. And the complainant testified that the surface water flowing down River Street, or at least a part of it, was turned into High Street. The contour of High Street is such that water flowing down has a tendency to flow over onto the south side, and there is the bulk of the current.   The whole situation was such in 1912 that after showers of rain all the surface water from the higher lands north of the street flowed either into the brook, and through the pipe under the street into the pond, or into River, Spruce, Brook Streets, Island Avenue and North Avenue, and from there into High Street, and then so

much ·of it as was not caught by the catch basins flowed down High Street to the lowest point opposite complainant's driveway or lawn, and there overflowed or was discharged onto the plaintiff's land in its downward course to the pond.

In June, 1912, the road commissioner of Sanford made certain repairs or improvements on High Street between Spruce Street and Island Avenue in front of the complainant's premises. Gravel was hauled on, and the street was rounded up in the center. The defendant town contends that the street was not raised by this work, that before the gravel was hauled the mud was scraped off, and that the gravel no more than supplied the place of the mud, and the earth previously in the road which had been washed away in storms and freshets. It contends that after the work in 1912 the street was left no higher than it had been at the time the road had been repaired the last time previously. On the other hand the complainant says that the work in 1912 actually raised the road six or eight inches. And he says in particular that before the work in 1912 the sidewalk by his house was two or three inches higher than the surface of the road, and that afterwards the surface of the road was from four to six inches higher than the sidewalk.

Under the statute the complainant can recover damages only for the injury to his property by reason of the raising of the road. If it was not raised, he cannot recover. If it was raised only so far as to replace matter that had been scraped off, or had washed off by the action of the elements, or had been worn down by travel, it was not a raising of the street within the meaning of the statute, and the complainant cannot recover. But we think the jury were warranted by the evidence in finding that there was a substantial raising of the street in front of the complainant's land. And we may as well say here as anywhere that if before the work in 1912, the street was lower than the sidewalk and higher than the sidewalk after, that change under some conditions might afford ground for a recovery of damages. When the street was lower than the sidewalk, it served as a canal, and had a tendency to carry the water along in the street. But when the street is higher than the sidewalk, there is a greater likelihood that water will overflow the sidewalk and onto adjoining land. And that likelihood might, under some circumstances, diminish the value of the land. How this reasoning may affect this case will·be considered later.

The only injurious effect of raising the street complained of is that surface water is thereby turned from the street onto complainant's land below.  The plaintiff testified that only once before 1912, and that seventeen years ago, had water from the street flowed onto his premises in damaging quantities.  Then to show the effect of the raising of the road in 1912 upon the value of his property he was permitted to show, by himself and other witnesses, the consequences of two or more rainstorms that occurred after the work was done, when the surface water flowed in large quantities down the streets into High Street, and down High to the point opposite his driveway or lawn, and over the sidewalk onto plaintiff's land.  He showed that it overflowed the lawn and flower bed several inches deep and spoiled them, and flowed down the driveway to the stable, and by the stable into and through his mill, doing great damage.  And in connection with this description, the plaintiff claimed that the catch basins were insufficient in number, size and location, and that they were clogged by debris, so as not to take in water to their capacity, to be carried away in the sewer.

The defendant contended rather unsuccessfully that the water on the occasions described came from an overflow of the brook.  But the defendant contended, and we think quite successfully, notwithstanding the complainant's denial, that on two or more occasions prior to the work in 1912, surface water after rainstorms had flowed down High Street and onto the complainant's land in large quantities. These are the material facts, and contentions in matters of fact.

We must now recur to the statute.  It gives a remedy in damages when an adjoining land owner is injured by the raising of a way. The measure of damages is the diminution in market value of the property injured by reason of the raising.  *Chase* v. *Portland,* 86 Maine, 367.  It does not include damages for physical injuries that have occurred or that may hereafter occur to the property itself in consequence of the raising, whether by surface water or otherwise. It does not include injuries which may result from insufficient catch basins, or from not keeping them cleaned and free.  It does not include injuries resulting merely from surface water flowing down the street, and overflowing on to the land.  A town is not liable in any form of proceeding for the consequences of some fault in the location, size, plan of construction or general design of its sewers.  *Keeley* v. *Portland,* 100 Maine, 260.  It is liable for failure to keep its sewers in

repair, *Keeley* v. *Portland,* supra, but not in a proceeding like this. Whether they are liable for failure to keep catch basins clear and free may be doubted. See *Dyer* v. *South Portland,* 111 Maine, 119. It is certain that that question cannot be considered in a proceeding for assessment of damages for raising a way. It is well settled that when land is taken for a way and damages are assessed, the damages are presumed to include not only the value of the land taken, but the diminished value of the remainder of the tract caused by the taking. And the likelihood that surface water from the road may be turned onto the adjacent lands is one of the elements to be considered in assessing land damages. *Peaks* v. *County Commissioners,* 112 Maine, 318. And after the assessment, it is to be conclusively presumed that it was taken into consideration. There is no further remedy. So in this case, we must presume that the likelihood that surface water would flow down High Street and onto the plaintiff's land at the lowest point was considered in the original assessment. The complainant can have no further damages for that.

But there is one situation, the consequences of which are not presumed to have been considered in the original assessment. And that is this. After a road has been built and a grade practically established, and when it may be presumed that the adjoining owners have adjusted their property, their fences, buildings, walks and so forth, to that grade, if a town raises or lowers the road to the injury of the adjoining owner, it must pay the damages. And that is the claim in this case.

The town is not liable now for the effect of the condition prior to the work in 1912. It is not liable for any depreciation of the value of the complainant's property because of a likelihood then that surface water would flow from the street onto his land. It is liable only for such depreciation in value as has been caused by an increased likelihood, by reason of the raising, that surface water will flow from the street onto the complainant's land, doing injury. Is there any such increased likelihood? and if so, to what extent? These are the questions now to be answered.

In the first place, it is clear that the raising of the road did not increase the likelihood that water coming down from an overflow of the brook, or surface water flowing down on the northerly side of the street would pass onto the complainant's premises. The raised road would serve as a dam, temporarily at least. It would not expedite the flow of the water.

Again, the complainant seeks damages because of the greater likelihood that water will flow down to his mill, and injure it. But there can be no greater likelihood of that now than before the street was raised. Water will flow down hill. When it reaches the bottom of a hill in a street, it must flow onto the adjoining lower land. It cannot go elsewhere. Nature provided a channel into which the surface water from High Street would have gone. It would have emptied into the brook. But the complainant has put the brook into a closed pipe, and obliterated the channel. He cannot complain that the surface water finds its way over his land in other courses.

We do not mean to say that the complainant could not lawfully make the fill and cover the channel of the brook so far as this case is concerned. And the liability of the town for damages must be considered with reference to any improved condition into which he had put his property. What we do say is that there is not, and cannot be, any greater likelihood now that surface water will flow over onto his land at the low point in the road than there was before 1912. All conditions except a slight raising of the road remain the same. There is the same contour of the ground, the same streets, the same sewer, the same catch basins, the same brook, the same liability to rainfall, the same necessity for surface water flowing down High Street to pass off on the lower side onto the land of the complainant. The raising of the road, which is the complainant's only legal ground of relief under the statute, has not changed any of these conditions.

It may be true, as already suggested, that if the street before the raising was lower than the sidewalk and higher afterwards, there is a greater likelihood that water will overflow the sidewalk before it reaches the low point, opposite the driveway and lawn. But, inevitably, it must pass on to the driveway or lawn, which are the low points on the complainant's residential grounds, on its way to the pond, the same as it must have done before 1912. The depreciation in value of the complainant's property on account of the change must be so small as to be inappreciable.

Whatever may be the injurious effect upon the value of the plaintiff's premises, because of the liability that surface water will flow down High Street and thence down across his land to the pond, we think it cannot be said that that liability has been increased by raising the way. The verdict of the jury for the complainant was clearly wrong.

*Motion for a new trial sustained.*